UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
SEP 2 8 2018
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

DEREK A. HEYLIGER, #12-B-0269,

       Plaintiff,

v.

JOYCE KRYGIER, STEPHEN
CASACELI, PAUL BLACK, and
RICHARD BEALL,[1]

       Defendants.

**DECISION AND ORDER**

6:14-CV-06123 EAW

## INTRODUCTION

*Pro se* plaintiff Derek A. Heyliger ("Plaintiff") brings this action asserting claims under 42 U.S.C. § 1983. (Dkt. 1). The operative complaint in this action is Plaintiff's Amended Complaint, filed on June 19, 2014. (Dkt. 8). Defendants Paul Black ("Black"), Stephen Casaceli ("Casaceli"), Richard Beall ("Beall"), and Joyce Krygier ("Krygier") (collectively "Defendants") have now moved for summary judgment. (Dkt. 53).

Defendants contend that summary judgment is appropriate because they did not use excessive force against Plaintiff, violate Plaintiff's equal protection or First Amendment rights, or thwart Plaintiff's right of access to the courts. (Dkt. 53-8). Plaintiff responded with a cross-motion for summary judgment. (Dkt. 55). In his cross-

---

[1] Defendants Casaceli and Beall are named in Plaintiff's Amended Complaint as "S. Casaceli" and "Beall," respectively. (Dkt. 8 at 1). The Clerk of Court is directed to amend the caption of this matter to reflect the full names of these defendants.

motion, Plaintiff indicated he wishes to waive all claims against Casaceli, Beall, and Krygier—thus, only pursuing claims against Black. (*Id.* at 31).[2] However, he contends there are genuine issues of material fact regarding his claims against Black and requests that summary judgment as to those claims be denied. (*Id.*). For the reasons that follow, Defendants' motion for summary judgment (Dkt. 53) is granted and Plaintiff's cross-motion for summary judgment (Dkt. 55) is denied.

## BACKGROUND

### I.    Procedural Background

Plaintiff commenced this action on March 13, 2014, alleging claims against employees at the Wende Correctional Facility ("Wende") and the Clinton Correctional Facility. (Dkt. 1). On May 21, 2014, the Court ordered that Plaintiff's claims regarding the Clinton Correctional Facility be transferred to the Northern District of New York. (Dkt. 7). Plaintiff then filed his Amended Complaint on June 19, 2014. (Dkt. 8). The Court screened the Amended Complaint pursuant to 28 U.S.C. § 1915(e) and allowed the following claims to proceed to service: (1) excessive use of force on Plaintiff by Black; (2) violation of Plaintiff's equal protection rights by Black; (3) violation of Plaintiff's First Amendment rights by Black; (4) failure to adequately train subordinates or to supervise, control, discipline, or correct unconstitutional practices or conditions by

---

[2]    Although Plaintiff did not submit a substantive opposition to Defendants' request for summary judgment as to these defendants, in light of his *pro se* status and mindful of its duty to assure that summary judgment is warranted, the Court has nonetheless assessed the viability of all the claims remaining in this matter below.

Casaceli, Beall, Dale Artus, and Brian Fisher; and (5) thwarting of Plaintiff's access to physical evidence by Krygier and Casaceli. (Dkt. 9 at 5-7).

On February 18, 2015, the remaining defendants moved to dismiss the Amended Complaint in part. (Dkt. 13). The Court granted the motion by Decision and Order dated March 21, 2016, dismissing Dale Artus and Brian Fisher from the case and dismissing Plaintiff's claims against Defendants in their official capacities. (Dkt. 18 at 6, 8). Defendants subsequently filed their answers to Plaintiff's Amended Complaint. (Dkt. 19; Dkt. 20; Dkt. 21; Dkt. 22).

Discovery in this matter closed on May 20, 2017. (Dkt. 46). On July 5, 2017, Defendants filed the instant motion (Dkt. 53), seeking summary judgment on all remaining claims, namely: (1) excessive use of force on Plaintiff by Black in his personal capacity; (2) violation of Plaintiff's equal protection rights by Black in his personal capacity; (3) violation of Plaintiff's First Amendment rights by Black in his personal capacity; (4) failure to adequately train subordinates or to supervise, control, discipline, or correct unconstitutional practices or conditions by Casaceli and Beall in their personal capacities; and (5) thwarting Plaintiff's access to physical evidence by Krygier and Casaceli in their personal capacities. (Dkt. 53-8 at 3). On July 31, 2017, Plaintiff responded to Defendants' motion with a cross-motion for summary judgment. (Dkt. 55). Defendants replied to Plaintiff's cross-motion for summary judgment on August 16, 2017. (Dkt. 57).

## II.   Factual Background

The following facts are taken from Defendants' Local Rule 56 Statement of Facts (Dkt. 53-1) ("Defendants' Statement") and Plaintiff's responsive papers (Dkt. 55). Because Plaintiff has failed to respond to each paragraph of Defendants' Statement as required by the Local Rules of Civil Procedure (*see* L. R. Civ. P. 56(a)(2)), and because the facts set forth therein are supported by citations to admissible evidence, the Court has generally deemed them admitted for purposes of this Decision and Order. *See N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005). However, where Plaintiff has specifically controverted particular facts, the Court has noted the disagreement, and has viewed the evidence in the light most favorable to Plaintiff.

### A.   The Prison Fight

On May 24, 2012, Black, Beall, and other New York State Department of Corrections and Community Supervision ("DOCCS") staff responded to a seven-inmate fight in a yard at Wende. (Dkt. 53-1 at ¶ 10). Beall was the area supervisor. (*Id.* at ¶ 11). Casaceli was not present in the yard when the fight occurred, nor did he directly supervise Black. (*Id.* at ¶¶ 12, 82).

At the time the fight broke out, there were approximately 66 inmates in the yard. (*Id.* at ¶ 13). Two inmates were fighting when Beall arrived. (*Id.* at ¶ 14). The DOCCS officers gave numerous orders to the inmates to stop, and when neither complied, additional staff was called, including Black. (*Id.* at ¶¶ 15, 18).

Plaintiff punched one of the two fighting inmates, and then a fourth inmate attacked Plaintiff before three more inmates joined the fight. (*Id.* at ¶¶ 16-17). When Black arrived, he saw Plaintiff fighting with another inmate. (*Id.* at ¶ 18). Plaintiff was hit on the top of the head by the inmate, which knocked him back onto the ground. (Dkt. 53-4 at 9). Plaintiff then got up and ran back towards the fight. (*Id.* at ¶ 19). Black and other staff instructed Plaintiff to stop fighting, but Plaintiff continued to try to rejoin the fight.[3] (*Id.* at ¶ 20). Black struck Plaintiff with his baton, and Plaintiff fell to the ground. (*Id.* at ¶ 21). Defendants allege Black struck Plaintiff on the knee (*id.*), while Plaintiff maintains he was struck on his head and then his knee (Dkt. 55 at 3, 5).

Plaintiff was handcuffed while the fight was ongoing, at which time Plaintiff, who is an African American male, protested Black's actions. (*Id.*). In response to Plaintiff, Black allegedly said, "Shut up you nigger, before I hit you again." (*Id.*). The entire incident, from the start of the fight to the officers placing Plaintiff in handcuffs, lasted approximately 30 seconds. (Dkt. 53-1 at ¶ 25; Dkt. 55 at 5).

Plaintiff was taken for medical examination and later transported to the Erie County Medical Center for further medical treatment. (Dkt. 53-1 at ¶¶ 23, 26). Medical staff determined Plaintiff had three abrasions on his face, a two-inch long, half-inch deep laceration on the top of his head, an abrasion on his elbow, and scratches on his hand and near his eye. (Dkt. 55 at 27). Plaintiff alleges that he received 14 staples in his scalp for

---

[3] Plaintiff alleges the DOCCS staff did not order Plaintiff to stop fighting at that time. (Dkt. 55 at 4). However, as discussed more fully below, the Court has reviewed the DOCCS' surveillance videotape of this incident, and while the video has no audio, it unquestionably shows the DOCCS guards communicating with the prisoners, including Plaintiff, to stop fighting. (*See* Dkt. 53-4 at 9).

the laceration. (*Id.* at 38). A 2-¼ inch tin can lid was recovered from the yard by DOCCS staff after the fight. (Dkt. 53-1 at ¶ 27).

Plaintiff maintains that Black's conduct amounts to excessive use of force and a violation of Plaintiff's equal protection and First Amendment rights, (Dkt. 55 at 6), and alleged in his Amended Complaint that Casaceli and Beall failed to adequately train subordinates or to supervise, control, discipline, or correct unconstitutional practices or conditions (Dkt. 8 at 13).

**B. The Surveillance Video**

A surveillance camera recorded the yard-fight incident described above on videotape. (Dkt. 53-1 at ¶ 49). During a disciplinary hearing for Plaintiff regarding this incident, the video was viewed several times by Plaintiff and the presiding officer, Casaceli. (*Id.*). On June 19, 2012, Casaceli informed Plaintiff in a memorandum that the videotape would be preserved. (*Id.* at ¶ 54). The Inmate Record Coordinator ("IRC") office generally only saves surveillance videos for two weeks unless an inmate requests preservation. (*Id.* at ¶ 63). The Freedom of Information Law ("FOIL") office and IRC office are usually not aware of the existence of videotapes shown at inmate disciplinary hearings and had no knowledge of the videotape shown at Plaintiff's hearing. (*Id.* at ¶¶ 56-57). Plaintiff sent a FOIL request asking for the videotape of the incident. (*Id.* at ¶ 58). An IRC staff member responded to Plaintiff's request under Krygier's name and advised Plaintiff that the videotape no longer existed because more than two weeks had passed since the yard fight. (*Id.* at ¶ 64). The video was later discovered in the hearing packet and was provided to Plaintiff. (*Id.* at ¶ 77).

A copy of the surveillance video was provided to and reviewed by the Court in connection with the instant motion for summary judgment. (*See* Dkt. 53-4 at 9). The surveillance video comports with the description of the yard fight set forth above. Plaintiff acknowledges that the surveillance video "accurately shows the events on May 24, 2012. . . ." (Dkt. 55 at ¶ 18).

In his Amended Complaint, Plaintiff alleged Casaceli and Krygier violated his constitutional rights because the initial response to his request for the videotape thwarted his access to physical evidence and consequently to the courts. (Dkt. 8 at 16-2; Dkt. 9 at 6-7).

## DISCUSSION

### I.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475

U.S. at 586-87). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Rule 56 also provides that if a non-moving party fails to oppose a summary judgment motion, "summary judgment, if appropriate, shall be entered against" him. Fed. R. Civ. P. 56(e). However, "where the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). If the evidence submitted in support of the motion for summary judgment does not meet the movant's burden of production, "summary judgment must be denied even if no opposing evidentiary matter is presented." *Amaker*, 274 F.3d at 681. "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's [Local Rule 56] statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vermont Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).

## II.    Plaintiff's Cross-Motion for Summary Judgment

In response to Defendants' motion for summary judgment, Plaintiff filed a document also purporting to be a motion for summary judgment pursuant to Rule 56(b).

(Dkt. 55). However, a review of this document reveals that Plaintiff is not in fact requesting summary judgment in his favor. To the contrary, Plaintiff expressly asks the Court to deny Defendants' motion and to find that there "exist[s] a genuine issue for trial." (*Id.* at 1-2). Accordingly, to the extent Plaintiff's response can be construed as a cross-motion for summary judgment, it is denied. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). However, in light of Plaintiff's *pro se* status, the Court has not disregarded Plaintiff's submission, but has treated it as a response in opposition to Defendants' motion for summary judgment. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (noting the Court's duty to liberally construe submissions by *pro se* litigants).

## III. Defendants' Motion for Summary Judgment

### A. Excessive Use of Force Claim

Plaintiff claims that Black used excessive and unnecessary force on him during the yard-fight incident, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. For the following reasons, the Court finds the force used by Black does not rise to the level of a constitutional violation as a matter of law.

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). In order to prove an Eighth Amendment violation, a plaintiff must demonstrate each of the following two elements by a preponderance of the

evidence: (1) the defendant used force against the plaintiff maliciously and sadistically, for the very purpose of causing the plaintiff harm; and (2) the plaintiff suffered some harm as a result of the defendant's use of force.[4] *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

The first element is considered a subjective analysis of the defendant's state of mind at the time of the incident. This requires a showing that the defendant had "'the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." *Goord*, 554 F.3d at 268 (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). Whether a use of force against a prison inmate is unnecessary or wanton depends on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7).

Some factors courts consider when determining whether prison officials unnecessarily and wantonly inflicted pain on an inmate include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citing *Whitley v. Albers*, 475 U.S. 312, 321

---

[4] Defendants do not dispute that Plaintiff suffered some harm as a result of Black's use of force. (*See* Dkt. 57 at 3). Viewing the record in the light most favorable to Plaintiff, the Court finds the objective portion of the *Hudson* test to be satisfied for purposes of Defendants' motion and focuses the remainder of its analysis on the first component.

(1986)). If, after evaluating these factors, the trier of fact finds the defendants acted maliciously, then wantonness has been established "[a]nd an Eighth Amendment violation has occurred." *Id.* However, if the factors lead the trier of fact "to find that the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied." *Id.*

Prison administrators receive "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). This "deference extends to a prison security measure taken in response to an actual confrontation," and "requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Id.* at 322; *see also Winters v. United States*, No. 10 Civ. 7571(JMF), 2013 WL 1627950, at *6 (S.D.N.Y. Apr. 16, 2013) ("As courts in this Circuit have held, corrections officers responding to prison fights act with discretion based upon their judgment and experience."); *Kalwasinski v. Artuz*, No. 02 CV 2582(LBS), 2003 WL 22973420, at *4 (S.D.N.Y. Dec. 18, 2003) ("[P]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (internal quotation omitted)).

Moreover, "[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in

retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319. As such, in order for an Eighth Amendment excessive use of force claim to survive a motion for summary judgment, the evidence, viewed in the light most favorable to the non-moving party, must go "beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives," and instead "support a reliable inference of wantonness in the infliction of pain. . . ." *Id.* at 322. Otherwise, "the case should not go to the jury." *Id.*

The *Kalwasinski* decision is instructive. There, one of the prison guard-defendants had ordered the plaintiff to move closer to the man in front of him in line. *Kalwasinski*, 2003 WL 22973420, at *1. When the plaintiff refused, the guard pushed the plaintiff against a wall. *Id.* The plaintiff then pinned the guard on the ground in front of 40 other prisoners, and the other guards present lifted the plaintiff off the first guard and threw him headfirst into another room. *Id.* The plaintiff's head struck the wall and a bench, and he suffered from a bump to the head, scratches, bruises, and abrasions. *Id.* at *4. The court granted summary judgment to the defendants, finding that the plaintiff's Eighth Amendment rights were not violated because: (1) he suffered only minor injuries; (2) the need for force was present because the plaintiff refused to follow a direct order and then pinned a guard on the ground in a room with 40 other prisoners; (3) the amount of force used was proportional to the need for force as demonstrated by the plaintiff's minor injuries and the guards' need to secure prison order; (4) the plaintiff posed a threat to

general prison security as well as the pinned guard; and (5) once the threat ended, the prison guards halted their use of force. *Id.* at *4-5.

In this case, the Court finds that no rational trier of fact could determine Plaintiff's Eighth Amendment rights were violated. Plaintiff's injuries were relatively minor. Medical staff determined Plaintiff had three abrasions on his face, a two-inch laceration on the top of his head, an abrasion on his elbow, and scratches on his hand and near his eye. (Dkt. 55 at 27). There is no indication in the record that Plaintiff suffered any long-term injury. Additionally, even viewing the evidence in the light most favorable to Plaintiff, at least some of these injuries are attributable to the prison fight itself, not Black. The surveillance video shows, among other blows received by Plaintiff throughout the course of the fight, that Plaintiff was hit on the top of the head by another inmate, which knocked him back onto the ground. (*See* Dkt. 53-4 at 9). Moreover, a tin can lid was later found in the prison yard that was approximately the same size as Plaintiff's laceration. (Dkt. 53-1 at ¶ 27).

Of course, any injury can constitute an Eighth Amendment violation. *See Hudson*, 503 U.S. at 7; *Romaine v. Rawson*, 140 F. Supp. 2d 204 (N.D.N.Y. 2001) (holding that when all parties admit that force was unnecessary, even a *de minimus* use of force violates the Eighth Amendment). As a result, the absence of a serious injury here, while relevant, is not dispositive. Accordingly, the Court must examine the other factors identified in *Romano*.

A reasonable finder of fact would be compelled to conclude there was a need for the application of force in connection with the yard-fight incident. Courts have

consistently held that using force on a prisoner does not violate his constitutional rights if done to maintain institutional security. *See, e.g., Whitley*, 475 U.S. at 322; *Hudson*, 503 U.S. at 7; *Goord*, 554 F.3d at 268. Here, a seven-person prison fight had broken out in an area with 66 other inmates. (Dkt. 53-1 at ¶¶ 10, 13). A reasonable finder of fact could only determine that Black's use of force on Plaintiff to quell a seven-person prison fight and maintain institutional security was appropriate. *See Kalwasinski*, 2003 WL 22973420, at *4; *Hernandez v. Jones*, No. 06 CV 3738 ARR, 2006 WL 3335091, at *2 (E.D.N.Y. Oct. 10, 2006) (finding no Eighth Amendment violation where, in the course of breaking up a prison fight, a prison guard allegedly sprayed pepper spray on inmate and threw him to the ground, causing a head injury); *Kee v. Hasty*, No. 01 CIV.2123(KMW)(DF), 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004) ("Where a prison disturbance was in progress at the time of the alleged constitutional violation, wide-ranging deference must be accorded to the actions of the prison officials in quelling the disturbance." (quotation omitted)).

Moreover, the amount of force used was proportional to the threat. Plaintiff's injuries in this case were minor, while the need to secure the prison yard by halting the seven-person fight was great. Accepting Plaintiff's testimony as true, Black struck Plaintiff on the head with a baton before hitting him again on the knee, after Plaintiff had ignored orders given by Black and the other DOCCS officers to stop fighting. (Dkt. 53-1 at ¶ 20; Dkt. 53-4 at 9; Dkt. 55 at 37). This evidence, viewed in the light most favorable to Plaintiff, does not go "beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. . . ." *Whitley*, 475 U.S. at

322. Plaintiff's opposition to Defendants' motion merely contests the reasonableness of the force Black used, *i.e.* hitting Plaintiff on the head as opposed to another method of detention. However, "[t]he Court must give considerable deference to prison officials and their decisions about how to best maintain institutional security." *Id.* at 321-22. The Court finds here that a rational trier of fact could not determine that Defendant Black using a baton to strike Plaintiff, who concedes he was attempting to rejoin a prison fight, was an unreasonable use of force. *Kalwasinski*, 2003 WL 22973420, at *1 (finding that throwing the plaintiff, who had pinned a prison guard on the ground, headfirst into another room was a reasonable use of force by the prison guards).

A rational trier of fact would also find the threat was reasonably perceived by Black. A seven-person fight in a prison yard with 66 prisoners is unquestionably threatening, both to the prison's general institutional security and to the DOCCS staff. It is beyond dispute that "attempting to stop an inmate fight . . . is a legitimate governmental objective for a [DOCCS] Officer." *Vargas v. N.Y.C. Dep't of Corr.*, No. 17 CIV. 2544 (JGK), 2018 WL 3392873, at *3 (S.D.N.Y. July 12, 2018).

Finally, Black only used force to the extent necessary to remove the threat. It is undisputed that as soon as Plaintiff was on the ground, he was handcuffed and no further force was used on him. (Dkt. 55 at 5). This demonstrates that Defendant Black did not use force wantonly, but in an effort to restore institutional security. Summary judgment on an Eighth Amendment excessive force claim is appropriate where a plaintiff cannot show the defendant "used any degree of force that was more than necessary to effect" his lawful objective. *Faruki v. City of N.Y.*, 517 F. App'x 1, 2 (2d Cir. 2013).

After reviewing the factors laid out in *Romano* as applied to Plaintiff's case, and looking at the evidence in the light most favorable to Plaintiff, the Court concludes that no reasonable trier of fact could find Plaintiff's Eighth Amendment rights were violated by Black. Accordingly, summary judgment for Defendants is warranted as to this claim.

## B. **Equal Protection Claim**

Plaintiff also claims Black violated his rights under the Equal Protection Clause of the Fourteenth Amendment when Black threatened Plaintiff using a racial slur. The Court finds the alleged use of a racial epithet by Defendant Black, while deplorable, does not violate Plaintiff's equal protection rights.

"The equal protection clause directs state actors to treat similarly situated people alike. To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). "In other words, '[t]o prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Randle v. Alexander,* 960 F. Supp. 2d 457, 476 (S.D.N.Y. 2013) (quoting *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir. 2005)) (alternations in original).

"Prison officials' use of racial epithets or discriminatory comments reflecting racial prejudice do not, without more, violate the Constitution." *McEachin v. Bek*, No. 06-CV-6453(MAT), 2012 WL 1113584, at *13 (W.D.N.Y. Apr. 2, 2012); *see Baskerville v. Goord*, No. 97-CV-6413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000) ("[T]he use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not

form the basis of a claim pursuant to § 1983."); *Wright v. Santoro*, 714 F. Supp. 665, 667 (S.D.N.Y. 1989) (holding comments made by prison official, including "Get your black ass out of my office" and "I'll lock your black ass up," unaccompanied by physical injury, did not amount to a violation of the plaintiff's Constitutional rights); *Keyes v. City of Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim.").

Notwithstanding the foregoing, "[c]ourts in this circuit and elsewhere have held that officers' use of racial epithets may be regarded as direct evidence of racial animus and, when combined with physical abuse or other unlawful actions, may establish an equal protection violation." *Ali v. Connick*, 136 F. Supp. 3d 270, 280 (E.D.N.Y. 2015). As such, the use of racially derogatory language coupled with "simultaneous physical abuse" can support an equal protection claim. *Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010). However, on a motion for summary judgment, it is not enough for the plaintiff to "demonstrate [the] defendant's bad motive." *Oliver v. Cuttler*, 968 F. Supp. 83, 88 (E.D.N.Y. 1997) (granting summary judgment as to an equal protection claim where a police officer allegedly struck plaintiff and used racial slurs during a traffic stop). The plaintiff must come forward with some evidence from which a trier of fact could find that a similarly-situated individual of a different race would have been treated differently. *Id.*; *see also Ali*, 136 F. Supp. 3d at 279 (holding no equal protection violation occurs when "the same result would have occurred even without consideration of the plaintiff's race or national origin").

In this case, no reasonable trier of fact could find that Plaintiff has established a violation of his right to equal protection. The record before the Court demonstrates that Black used force on Plaintiff to restore order in the prison yard, not to inflict injury because of racial prejudice. Black struck Plaintiff during the course of a seven-person prison fight after Plaintiff ignored orders from DOCCS staff to stop fighting. (Dkt. 53-1 at ¶¶ 20-21). Once Plaintiff was on the ground and no longer trying to engage in the fight, Black immediately stopped using force. (Dkt. 53-1 at ¶ 21, 23). While Plaintiff was being handcuffed, the other inmates were still fighting, and it was at this time that Black allegedly threatened to hit Plaintiff again and used the racial slur. (Dkt. 53-1 at ¶ 23-25; Dkt. 55 at 5). These circumstances indicate that Defendant Black's use of force and subsequent threat were attempts to control the situation in the prison yard, not to hurt Plaintiff because of his race. More importantly, there is no evidence in the record from which a trier of fact could reasonably conclude that Black would have treated a similarly-situated individual of a different race—namely, an inmate who had ignored direct orders and was attempting to rejoin a fight in progress—any differently than Plaintiff. Plaintiff cannot establish an equal protection violation on these facts. *See Stone v. Eamer*, No. 7:15-CV-97 (LEK/ATB), 2018 WL 557872, at *8 (N.D.N.Y. Jan. 19, 2018) (granting summary judgment to prison guard as to an equal protection claim, "his alleged use of racial slurs notwithstanding," because there was no evidence he had treated similarly-situated individuals differently on the basis of race).

To be clear, if the allegations Plaintiff makes against Black are true, they are reprehensible. However, not all deplorable behavior rises to the level of a constitutional

violation, and in this case, Plaintiff has failed to adduce sufficient evidence for a reasonable trier of fact to find his right to equal protection was violated. Defendants are therefore entitled to summary judgment as to Plaintiff's equal protection claim.

## C. First Amendment Claim

Plaintiff claims his First Amendment rights were violated when, during the prison fight and in response to his protests over Black's use of force, Black silenced Plaintiff with a threat. Plaintiff has failed to support this claim with legally sufficient evidence.

To establish a First Amendment retaliation claim under § 1983, a prisoner must demonstrate: "(1) that his speech or conduct was constitutionally protected, (2) that the defendant took adverse action against him, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). When determining whether speech is constitutionally protected under the first prong of the analysis, the Supreme Court has upheld the use of reasonable time, place, and manner restrictions. *See, e.g., Pell v. Procunier*, 417 U.S. 817, 826 (1974). "The nature of a place, the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable." *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972). "The 'normal activity' to which a prison is committed—the involuntary confinement and isolation of large numbers of people, some of whom have demonstrated a capacity for violence—necessarily requires that considerable attention be devoted to the maintenance of security." *Pell*, 417 U.S. at 826-27. If a time, place, or manner restriction imposed in

a prison is content-neutral and leaves open alternative channels of communication, it "does not abridge any First Amendment freedoms retained by prison inmates." *Id.* at 828; *see also Brown v. McGinnis*, No. 05-CV-758S, 2012 WL 267638, at *3 (W.D.N.Y. Jan. 30, 2012) ("[P]rovided that reasonable and effective means of communication remain open to inmates, and no discrimination in terms of content is involved, prison officials are accorded latitude in fashioning restrictions on the time, place and manner of communications by inmates.").

In this case, a reasonable trier of fact could not determine Plaintiff's First Amendment freedoms were abridged. A restriction on speech does not violate a prison inmate's First Amendment rights if it is content-neutral and leaves open alternative channels of communication. *Pell*, 417 U.S. at 828. Here, Black purportedly silenced Plaintiff while a prison fight was ongoing and other officers were still securing the situation. (Dkt. 55 at 5). He told Plaintiff to "shut up" without indicating that he was upset with the content of Plaintiff's complaint. (*Id.*). Under these circumstances, a reasonable trier of fact would necessarily determine that Black would have silenced Plaintiff at that time, no matter what Plaintiff said, to make sure the situation was secured.

Additionally, there is no question that Plaintiff had other channels of communication available to him. Plaintiff later filed a grievance against Black, had a witness testify regarding Black's actions at a disciplinary hearing, and filed the instant lawsuit. (Dkt. 53-1 at ¶ 41; Dkt. 1). The hearing and filings demonstrate conclusively that Plaintiff had alternate ways to communicate his objections to Black's treatment of

him. Therefore, a trier of fact could not reasonably find Plaintiff's First Amendment rights were violated by Defendant Black's actions, and summary judgment is warranted as to this claim. *See McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *27 (S.D.N.Y. Mar. 31, 2016) (noting that "there is a distinction to be made between the inmate who stridently challenges a prison official's authority in the moment and his peer who instead brings his complaints through the designated channels, such as the prison's grievance procedure," and that "an effort to "confront [a member of] staff and discuss [an] issue[ ] with him, . . . in prison, simply does not enjoy First Amendment protection") (quotation omitted); *cf. Garrido v. Coughlin*, 716 F. Supp. 98, 101 (S.D.N.Y. 1989) (distinguishing between an exercise of First Amendment rights and a mere "verbal confrontation" with prison staff).

### D. Failure to Train or Supervise Claim

Plaintiff claims Casaceli and Beall violated his Eighth Amendment rights through a failure to adequately[ train subordinates or to supervise, control, discipline, or correct unconstitutional practices or conditions. The Court finds Defendants' conduct did not violate Plaintiff's Eighth Amendment rights.

In the Second Circuit, it is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *see also Glick*, 481 F.2d at 1034 ("The rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a

showing of some personal responsibility of the defendant is required."). A supervisory defendant's personal involvement may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Here, a reasonable trier of fact could not find that Beall or Casaceli violated Plaintiff's Eighth Amendment rights by failing to adequately train, supervise, control, discipline, or correct Black. As a threshold matter, and for the reasons discussed above, Black did not engage in behavior that violated Plaintiff's constitutional rights. Therefore, Beall and Casaceli could not have violated Plaintiff's constitutional rights in their capacities as Black's supervisors. *See Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation.").

Even assuming, for the sake of argument, Black had violated Plaintiff's constitutional rights, Beall and Casaceli would still not face liability under § 1983. "A police officer is personally involved in the use of excessive force if he ... was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (N.D.N.Y. 2003); *see O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement

officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."); *Jones v. Huff*, 789 F. Supp. 526, 535 (N.D.N.Y. 1992) ("A corrections officer bears an affirmative duty to intercede on behalf of an inmate when the officer witnesses other officers maliciously beating that inmate in violation of the inmate's Eighth Amendment rights."). "[A]n officer is excused from liability, despite his presence, if the assault is 'sudden and brief,' such that there is no real opportunity to prevent it." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 428 n.9 (N.D.N.Y. 2009).

In this case, Casaceli was not in the prison yard when Black hit Plaintiff, so he is excused from § 1983 liability pursuant to this well-established case law. Beall was present during the fight (Dkt. 53-1 at ¶ 10), but the entire incident, from the start of the fight to the officers placing Plaintiff in handcuffs, lasted only approximately 30 seconds, (*Id.* at ¶ 25; Dkt. 55 at 5). Additionally, it only took five seconds for Black to run across the yard and hit Plaintiff, and the hit occurred when Beall was securing other prisoners involved in the fight. (*See* Dkt. 53-4 at 9). Based on the suddenness and brief duration of the claimed assault, a reasonable trier of fact could not conclude Beall had any real opportunity to prevent it. Therefore, Beall cannot be held liable under § 1983.

Plaintiff's claim that Beall and Casaceli failed to train Black also does not pass muster. "A general allegation that [a supervisor] failed to train subordinates . . . is insufficient to establish personal involvement, absent some factual connection between their failure to train and the harm that eventually befell Plaintiff." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016); *see also Canales v. Sheahan*, No. 12-CV-

693(LJV)(HBS), 2017 WL 1164462, at *4 (W.D.N.Y. Mar. 28, 2017) (holding the plaintiff's claim that the supervisor was not present in the area where the assault occurred was too general to adequately allege any wrongful conduct on the part of the supervisor). The plaintiff must show that the defendant "knew or should have known that there was a high degree of risk that his subordinates would behave inappropriately" and then "deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to Plaintiff." *Frederick v. Sheahan*, No. 10–CV–6527, 2014 WL 3748587, at *8 (W.D.N.Y. July 29, 2014) (alterations omitted) (quoting *Poe v. Leonard*, 282 F.3d 123, 142 (2d Cir. 2002)); *Samuels*, 168 F. Supp. 3d at 638. On the record before the Court, Plaintiff has made no showing that Black had a high risk of behaving inappropriately, or that Beall or Casaceli knew or should have known of any such risk. To the contrary, the record shows Defendant Black received training prior to working for DOCCS and takes continuing training each year in use of force. (Dkt. 53-1 at ¶¶ 84-85). Therefore, a reasonable finder of fact could not determine that Beall or Casaceli failed to train Black in violation of Plaintiff's Eighth Amendment rights.

## E. **Thwarting of Access to the Courts Claim**

Finally, Plaintiff claims Casaceli and Krygier thwarted his access to physical evidence in violation of his constitutional rights. However, there is no evidence in the record to demonstrate that either of these Defendants thwarted Plaintiff's access to physical evidence, and consequently Plaintiff's rights were not violated.

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir. 1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821–23 (1977)). A § 1983 claim for denial of access to the courts requires the plaintiff to demonstrate there is "(1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim." *See Arar v. Ashcroft,* 585 F.3d 559, 592 (2d Cir. 2009) (quoting *Christopher v. Harbury,* 536 U.S. 403, 415 (2002)). The plaintiff must demonstrate an "actual injury" by showing that his underlying claim was non-frivolous. *Lewis v. Casey,* 518 U.S. 343, 351-353 (1996) (reasoning that the "actual injury" requirement means that inmates must "demonstrate that a nonfrivolous legal claim [has] been frustrated or was being impeded.").

On the instant record, a reasonable trier of fact could not find any of Defendants denied Plaintiff access to the courts. To prevail, Plaintiff must demonstrate Defendants' actions frustrated a non-frivolous underlying claim. The uncontroverted evidence shows Casaceli informed Plaintiff in a memorandum that the videotape of the prison fight where Black struck Plaintiff would be preserved. (Dkt. 53-1 at ¶ 54). After requesting a copy of the video, Plaintiff initially received a response from the IRC under Krygier's name mistakenly advising him that the video no longer existed. (*Id.* at ¶ 64). However, the video was later discovered in the hearing packet and was then provided to Plaintiff. (*Id.* at ¶ 77). Plaintiff subsequently filed the instant lawsuit. (Dkt. 1). In other words,

Plaintiff ultimately was able to obtain the physical evidence he sought and to pursue this matter without any interference. Therefore, a reasonable trier of fact would find that Casaceli and Krygier did not frustrate Plaintiff's access to the courts and that their actions were at most a minor inconvenience for Plaintiff. Defendants are therefore entitled to summary judgment with respect to this claim.

### F.    Qualified Immunity

Defendants also contend that they are entitled to qualified immunity with respect to all of Plaintiff's claims. (*See* Dkt. 53-8 at 22-25). "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) (quoting *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014)). Here, because the Court holds a reasonable trier of fact would find Plaintiff did not produce enough evidence to demonstrate that Defendants violated his constitutional rights, the Court does not reach the issue of whether Defendants are entitled to qualified immunity.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 53) is granted, and Plaintiff's cross-motion for summary judgment (Dkt. 55) is denied. Plaintiff's Amended Complaint is dismissed. The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 28, 2018
       Rochester, New York